**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division


KIMBERLIN MARIE DEEM,

        Plaintiff,

v.                                                                              ACTION NO. 2:10cv394

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,

        Defendant.


## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Plaintiff brought this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") that denied Plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act.

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. This Court recommends that the decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL BACKGROUND

Plaintiff Kimberlin Marie Deem filed an application for Disability Insurance Benefits on February 1, 2008 (R. 98-105),[1] alleging disability since April 30, 2007, due to congestive heart failure, cardiac arrhythmia, palpitations, sleep apnea, lymphedema, and depression. R. 98, 138. The Commissioner denied Plaintiff's application initially (R. 68-72) and on reconsideration (R. 75-80). Plaintiff requested and received an administrative hearing on September 15, 2009 before ALJ William T. Vest, Jr. R. 22-44. The ALJ issued a decision denying Plaintiff's claim on September 28, 2009. R. 9-21. On June 10, 2010, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. R. 1-5. Plaintiff timely filed the instant action for judicial review by this Court, pursuant to 42 U.S.C. § 405(g). ECF No. 1. The case is ripe for resolution of the parties' cross-motions for summary judgment. ECF Nos. 8 & 11.

## II. FACTUAL BACKGROUND

At the date of application, Plaintiff was 49 years old. R. 98. Plaintiff graduated high school and attended Key Business College where she obtained a certificate to become a medical office employee. R. 31-32. Plaintiff's past relevant work experience include positions as a meat counter clerk, a grocery cashier, and a medical receptionist. R. 39. Plaintiff alleges suffering increasing chest congestion and pain leading to a disability onset of April 30, 2007. Plaintiff has acquired sufficient quarters of coverage to remain insured through December 31, 2012. R. 12.

### A. Medical Evidence in the Record

Prior to Plaintiff's onset date, she saw Dr. Alesia Griffin on April 7, 2006, complaining of lower back pain and urinary incontinence, for which she was prescribed Flexeril and Motrin. R.

---
[1] Page citations are to the administrative record (ECF No. 5).

264. Plaintiff returned to Dr. Griffin on June 1, 2006, complaining of leg swelling. She was found to have 2+ pedal edema. R. 262. She also underwent a lower extremity venous duplex scan on May 18, 2006, which revealed good arterial flow and no deep vein thrombosis. R. 199-200.

In May 2007, Plaintiff was hospitalized for two nights after a gradual worsening of chest congestion, and chest pressure that caused Plaintiff to feel "that she was drowning." R. 203. The records indicate that she was morbidly obese with a history of lymphedema, and took Lasix daily for lower extremity edema. Id. Plaintiff submitted to a number of tests, including a CT scan of her chest that indicated possible pulmonary hypertension but no evidence of an embolism. R. 205. Other exams indicated normal operation of her heart and her lymphatic system. R. 205, 311-12, 313-15. During the hospital stay, Plaintiff was anticogulated and rate controlled. R. 205. The resulting diagnosis from this hospitalization was "new-onset" atrial fibrillation and congestive heart failure. R. 203. Plaintiff was told to follow-up with her primary care physician and to eat a prescribed diet. R. 206. She was also prescribed Coumadin and Lovenox. Id.

A June 5, 2007 follow-up with Dr. Griffin showed no apparent distress, and her heart had a regular rate and rhythm. R. 260. Plaintiff denied having chest pain, or shortness of breath. R. 254. She was placed on Toprol, a beta blocker, and referred to cardiac rehabilitation to improve her endurance, after complaining of fatigue. R. 254-55, 260.

On August 6-8, 2007, Plaintiff was hospitalized after being referred by Dr. Griffin. R. 211. After a routine follow-up with Dr. Griffin, Plaintiff had become short of breath, and had the same feeling of drowning. She reported feeling chest pain and pressure, and presented with atrial fibrillation and edema. Id. An attempted electrical cardioversion failed and Plaintiff's

heart rate was controlled with medications. R. 211, 213. She was given Lasix for her edema. At her discharge, Plaintiff was diagnosed with CHF exacerbated by chronic obstructive pulmonary disease. R. 213. When she left, Plaintiff was not experiencing shortness of breath, and had a significant decrease in edema. R. 214.

Plaintiff followed up on August 16, 2007 with Dr. Griffin where she denied having chest pains, palpitations, tachycardia, and edema. R. 248. She did complain of shortness of breath and frequent wheezing. R. 248. All aspects of her cardiovascular exam were unremarkable. R. 248-49. Dr. Griffin refilled Plaintiff's Lasix, for atrial fibrillation, and Wellbutrin, for depression related to chronic illness. R. 249. Plaintiff saw Dr. Griffin again on August 23, 2007, and again her exam was unremarkable. R. 246-47. Plaintiff was told to return in two months. R. 247.

Plaintiff returned to Dr. Griffin a few weeks later on September 6, 2007. Her exam was unremarkable and she denied recent chest pain, palpitations, tachycardia, edema, and shortness of breath. R. 243. Dr. Griffin refilled her Prilosec. R. 244. Under status, Dr. Griffin noted that Plaintiff was currently unable to work secondary to shortness of breath and chest pressure. She noted this may improve with cardiac rehabilitation.[2] Id.

On September 13, 2007, and October 16, 2007, Plaintiff returned to Dr. Griffin for follow-up visits. R. 237-38, 241-42. Both of these visits were very similar to the September 6, 2007 visit. Plaintiff reported no change in condition, or chest pains, palpitations, tachycardia, edema, or shortness of breath. On September 13, 2007, Dr. Griffin switched Plaintiff from Wellbutrin to Celexa for her illness-related depression. R. 242. She again noted that Plaintiff was currently unable to work, but may improve with cardiac rehabilitation. R. 238, 242.

---

[2] The administrative record does not contain records related to cardiac rehabilitation and it is unclear if Plaintiff ever participated in rehabilitation.

Plaintiff saw Dr. Adinaro, a cardiovascular disease specialist, on November 1, 2007. R. 225-226. Plaintiff improved on an increase in Lopressor, and reported no chest pain or discomfort, and no palpitations, or dyspnea. R. 225. Plaintiff requested a decrease in diuretics and Dr. Adinaro stopped the spironolactone and cut her Lasix. R. 226. He also increased Toprol for ease of dosing. R. 226. Plaintiff's exam overall was unremarkable.

Plaintiff returned to Dr. Griffin on November 5, 2007, where she denied chest pain, palpitations, tachycardia, edema or shortness of breath. R. 234. Her exam was unremarkable and Plaintiff received an influenza immunization. R. 234-35.

On November 13, 2007, Plaintiff called into Dr. Adinaro's clinic to report that the November 1 change in her medication was causing palpitations. On November 21, 2007, Plaintiff called the clinic to report that the change in her metaprol was working, and she was feeling "right." R. 223, 222.

Plaintiff visited Dr. Griffin on December 7, 2007 for a follow-up visit. R. 232. Plaintiff noted she had experienced shortness of breath, edema, and fatigue, but was following her medication regimen. R. 232. She was in no apparent distress at the visit and her physical exam was similar to the other recent follow-ups with Dr. Griffin noted above. R. 232-33.

Plaintiff followed up with Dr. Adinaro on January 3, 2008. R. 220-21. Plaintiff complained that her edema returned and she had some palpitations between doses of her medication. Dr. Adinaro noted that Dr. Griffin had restarted Plaintiff on spironolactone. R. 220. Plaintiff's physical exam was unremarkable, and Dr. Adinaro noted an improvement in heart rate overall, some weight loss, and a decrease in smoking. R. 220-21.

In February 2008, Plaintiff completed a <u>Function Report</u> questionnaire. R. 145-52. The

questionnaire asked a variety questions centering around the Plaintiff's daily activities and her comfort level during the day to assess the impact her medical conditions were having on her life. Plaintiff reported that she performed light housework, prepared meals, attended to pets, and drove family members to and from work. R. 145-46. She reported that she used to be able to climb in and out of the bath tub, walk long distances, sit for long periods, and lift at least 50-70 pounds, but could no longer do these tasks because of her illness. R. 146. Plaintiff reported that she drifted in and out of sleep frequently without realizing it. Id. She stated that she prepares meals every other day, and can complete house cleaning, ironing, yard raking, and planting with breaks and some help from family members. Id. Additionally, she reported that she gets around "a lot," drives, and can shop for food, clothing, gifts, and personal items as often as necessary. R. 148. Plaintiff reported no problems concentrating, completing tasks or hobbies. R. 148-50. Plaintiff did state that the time to complete tasks took longer, and her social activity has decreased because of her illness. She reported using no aids to get around.

Plaintiff visited Dr. Griffin on February 4, 2008 for a follow-up exam, and reported no chest pain, palpitations, or edema and the remainder of her exam was unremarkable. R. 230-31. Plaintiff did not return to Dr. Griffin until June 11, 2008. R. 267. Her exam was the same as her prior follow-up on February 4. R. 268. Plaintiff was referred to a sleep study by Dr. Griffin, but she did not submit these results for consideration. R. 268.

Plaintiff's treatment was evaluated by Dr. R. Castle, a consultant for the state agency. Dr. Castle submitted a <u>Physical Residual Functional Capacity Assessment</u> of the Plaintiff. R. 280-86. After reviewing all the medical evidence in the record, Dr. Castle concluded that while she did suffer from congestive heart failure and atrial fibrillation, the limiting effects claimed by the

6

Plaintiff were not entirely credible. R. 286. Plaintiff's allegations of lymphedema and sleep apnea are not supported by the record, and her daytime fatigue was related to obesity. Id. Dr. Castle notes that her conditions were "extremely compliant with medications," and her exams demonstrate that she is experiencing no shortness of breath. Finally, Plaintiff's self-report demonstrates that she is active on a daily basis. R. 286.

On September 3, 2009, Dr. Griffin prepared a letter in support of Plaintiff's application for disability benefits. R. 324-25. Dr. Griffin also submitted a <u>Multiple Impairment Questionnaire</u>. R. 326-33. Overall, Dr. Griffin supported Plaintiff's application due to her medication regimen, which requires the Plaintiff to take frequent breaks and causes drowsiness. Plaintiff was deconditioned with no reasonable means of improving given the side effects of her medication. R. 325. Dr. Griffin noted that Plaintiff had many limitations which would prevent her from performing competitively in a full-time job. R. 331. Although, Plaintiff could perform low-stress work and had no limitations in her fine motor skills, she would need frequent breaks every hour and would be absent from work at least three days per month due to her disability. R. 332.

### B. Hearing Testimony

Plaintiff testified at an administrative hearing on September 15, 2009 in Norfolk. R. 22-44. Plaintiff stated that she is married and lives at home with her husband, a veteran who works two jobs, and her son and daughter. R. 26, 30. She noted that she had been advised to lose weight, but has never been able to lose weight. Id. Plaintiff's daily routine includes vacuuming, dusting, cooking, and laundry which take her most of the day to complete. R. 27. She needs assistance carrying anything over ten pounds, and must rest periodically while completing her tasks. Additionally, she testified that her conditions and medication cause exhaustion and she sleeps

about 16 hours a day. R. 38. In contrast to the records provided, the Plaintiff testified that she has not driven in two years and does not have a valid license. R. 29-30. She does try to get out of the house as much as possible, and testified that she walks around her block (R. 29), visits with friends (R. 30), and visits her family (Id.). Plaintiff testified that her medication does not help the swelling in her legs, which occurs at least three days a week. R. 32-33. The medication, Celexa, prescribed for illness-related depression, did not help according to the Plaintiff, and she has some days where she feels like she cannot get out of bed. R. 33-34. Finally, Plaintiff stated that she has difficulty remembering faces, dates, appointments and meetings due to confusion caused by her medication. R. 39-38.

Impartial Vocational Expert Paula Day (VE) testified at the hearing after reviewing the vocational evidence in the record. R. 40. After positing a hypothetical scenario, the VE testified that an individual of Plaintiff's age, education, and work experience could perform any of Plaintiff's former jobs. Id. The hypothetical individual could perform sedentary work that involved lifting and carrying ten pounds occasionally, sit for eight hours and walk or stand for two hours in an eight-hour day, could not climb or crawl, could occasionally bend or stoop, and could not work around unprotected heights or machinery. Id. The individual could work as a medical receptionist and could also perform other work in the semi-skilled sedentary job category, which exist in significant numbers in the national economy. Id. These jobs would also allow the person to alternate sitting and standing. R. 41. Upon further questioning by the Plaintiff's representative, the VE testified that if the individual could walk, sit or stand for a maximum of three hours total, this would preclude competitive employment. R. 41-42. Additionally, should the individual be unable to interact appropriately with the general public,

then that would preclude all jobs listed by the VE. R. 42.

**C. Decision of the ALJ**

The ALJ's decision found that the Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of April 30, 2007, and therefore met step one of the sequential evaluation process. R. 14. At step two and three, the ALJ found that Plaintiff had congestive heart failure and obesity which were severe impairments, but they did not meet or equal in severity any of the Listings of Impairments in 20 C.F.R., pt. 404, Subpt. p. R. 14-16. The Plaintiff's depression was non-severe and did not cause more than minimal limitation. R. 14-15.

The ALJ considered the entire record, including Dr. Griffin's opinion, along with other opinion evidence, and in congruence with the requirements of 20 C.F.R. § 404.1527 and Social Security Rulings, and found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work. R. 16. The ALJ modified the work by finding that Plaintiff can lift or carry ten pounds occasionally, sit for eight hours and walk or stand for two hours in an eight-hour work day, and must periodically alternate between sitting and standing, can only occasionally bend or stoop, and cannot perform work that involves climbing, crawling, or exposure to heights and dangerous machinery. <u>Id.</u> The Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms that she alleged. R. 17. The Plaintiff's statements, however, concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with her RFC assessment, and the ALJ determined Plaintiff's statements to be not credible. R. 17-18. The allegations of intensity, persistence, and limiting effects of her symptoms did not comport with the evidence in her medical history and her account of daily activities. R. 17-18.

Plaintiff visited Dr. Griffin throughout 2007 and into 2008, but exhibited abnormal heart rhythm once in July 2007. Overall, her exams were unremarkable, and her condition was stable on medication. R. 18. Also, she recounted for the ALJ, and reported throughout the record that she routinely visited friends, family, played cards, and completed household chores. R. 18. Her depression did not limit her, and she sought no specialized psychiatric treatment. Id. The ALJ found that the record demonstrated that she could perform her past work as a medical receptionist and, therefore, is not disabled, as defined by the Social Security Act, through the date of the decision. R. 20-21.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N. Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is

disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either (A) the ALJ's determination is not supported by substantial evidence on the record, or (B) the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for a period of disability and DIB under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, and be under a "disability" as defined in the Act. The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the:

> inability to do any substantial gainful activity[3] by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a) (2010); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A) (2008). To

---

[3] "Substantial gainful activity" is work that (1) involves doing significant and productive physical or mental duties; and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510; § 416.910 (2010). Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572 (2010).

[4] "Physical or mental impairment" is defined in section 223(d)(3) of the Social Security Act, Title 42 U.S.C. § 423(d)(3), as an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

meet this definition, the claimant must have a "severe impairment"[5] which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.[6] 20 C.F.R. § 404.1505(a) (2010); see also 42 U.S.C. § 423(d)(2)(A) (2008).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered to determine whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The ALJ must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment that prevents him from any substantial gainful employment. An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920.

Plaintiff argues that the ALJ erred when he (1) failed to follow the treating physician rule; (2) failed to properly evaluate Plaintiff's credibility; and (3) found Plaintiff could perform her past work as a medical receptionist. Pl. Mem. in Support of Summ. J. at 8-16, ECF No. 10.

---

[5] The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[6] The Administration may satisfy its burden by showing that considering the claimant's residual functional capacity, age, education and work experience, the claimant is either disabled or not disabled based on medical-vocational guidelines, or "grids," published at 20 C.F.R., Pt. 404, Subpt. P, App. 2 (2010). However, technical application of the grids is not always appropriate, and thus the Commissioner must rely on the testimony of a vocational expert to determine whether an individual claimant is in fact capable of performing substantial gainful activity available in significant numbers in the economy. 20 C.F.R. § 416.920(f) (2010); § 404.1520(f) (2010); Heckler v. Campbell, 461 U.S. 458, 466 (1983); SSR 83-10.

Because the ALJ's finding is supported by substantial evidence on the record, and the ALJ afforded the proper weight to the evidence, the Court declines to overturn the decision of the Commissioner.

### A. The ALJ Afforded Dr. Griffin Proper Weight

ALJ Vest noted that Dr. Alesia Griffin, M.D. was Plaintiff's treating physician, but afforded her "minimal weight," because her treatment notes, conservative course of treatment, and Plaintiff's stability on medication are inconsistent with her conclusion that Plaintiff is unable to work. R. 18. Plaintiff argues that the ALJ erred by failing to follow the Treating Physicians Rule and affording Dr. Griffin the proper weight. Pl.'s Mem. at 8-9. The "treating physician rule," has been superseded by statute and is no longer the proper standard. See 20 C.F.R. §§ 404.1527, 416.927; Pitman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001). The proper standard provides that a treating source's opinion on issues regarding the nature and severity of impairment is to be given controlling weight if it is well supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1526(b); 404.1527(d)(2); 416.927(d)(2). Conversely, however, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

The ALJ concluded that although Dr. Griffin stated that Plaintiff was unable to work due to shortness of breath and chest pressure, this conclusion was "not consistent with the claimant's activities of daily living or the conservative course of treatment she has received." R. 18. The ALJ stated that, although Dr. Griffin was Plaintiff's treating physician, her "own treatment notes

indicate that the claimant was in stable condition and regularly exhibited normal results on physical examinations." Id.  A detailed review of the medical records by this Court demonstrates substantial support for the ALJ's findings.  Only once in a year and a half of regular visits did Dr. Griffin note an irregular heartbeat. R. 284.  Plaintiff did visit the emergency room twice, but was monitored and released with medication.  Each occurrence was followed by a visit to Dr. Griffin who noted an unremarkable physical exam.

Additionally, the record contains the opinion of Dr. Castle who found that it was "reasonable [that] her conditions may cause some limitations, however it is reasonable she could complete these tasks in moderation."  R. 286.  After noting that Plaintiff was "extremely compliant with medications," Dr. Castle found that Plaintiff's alleged limitations were "only partially credible" in light of the control exercised by her medications. Id.  The ALJ found that Dr. Castle's opinion was consistent with her daily living activities, including self-care, light housework, caring for pets, cooking, driving, and shopping. R. 18.

The ALJ need only give Dr. Griffin controlling weight if her opinion is supported by medically accepted techniques and is not inconsistent with the balance of the record. 20 C.F.R. §§ 404.1526(b), 404.1527(d)(2), 416.927(d)(2).  In this instance, the record does not support Dr. Griffin's conclusion that Plaintiff cannot work.  In fact, her own records demonstrate consistently unremarkable exam results and that Plaintiff's congestive heart failure is well-controlled by medication, and are sharply in contrast with Dr. Griffin's finding.  When the opinion of a treating physician is "inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.  The ALJ's findings are consistent with this principle and are supported by substantial evidence on the record.

**B. The ALJ Properly Evaluated Plaintiff's Credibility**

Plaintiff next argues that the ALJ improperly evaluated Plaintiff's testimony when he stated that her "allegations regarding the intensity, persistence, and limiting effects of her symptoms are not fully credible." R. 18. Although credibility assessments are improper at this stage of the proceeding, this Court is empowered to review the Commissioner's decision for support, and find that substantial evidence supports the ALJ's finding as to Plaintiff's credibility. Johnson, 434 F.3d at 658–59 (citing Craig, 76 F.3d at 589). Additionally, "[s]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591. The ALJ's assessment of Plaintiff's credibility is entitled to great weight if it is supported by the record. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984).

The ALJ properly followed the two-part test set out in Craig v. Chater. The ALJ first considered "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." R. 17. The ALJ considered the record and found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms. . . ." Id. However, at step two, the ALJ determined that the Plaintiff's allegations of the "intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [] residual functional capacity assessment." Id. The evidence in the record of Plaintiff's daily activities suggests that she is able to perform many tasks without assistance from others, and needs assistance only occasionally. Additionally, the Plaintiff's RFC is

consistent with her limitations and need to rest. The ALJ's determination that Plaintiff's allegations of severe pain are inconsistent with the record, particularly Dr. Griffin's own treatment history, is supported by substantial evidence on the record.

**C. The ALJ Did Not Err In Determining That Plaintiff Could Perform Her Past Work**

Finally, Plaintiff argues that the ALJ's reliance on the VE's testimony that Plaintiff could perform her past relevant work as a medical receptionist was in error. Pl.'s Mem. at 15. Plaintiff argues that because the ALJ improperly evaluated the medical evidence and Plaintiff's credibility, the ALJ's comparison of Plaintiff's RFC with her work as a receptionist fails. Id. at 16. As discussed in Parts A and B, supra, the ALJ did not err in his evaluation of the record, or in his evaluation of Plaintiff's credibility, therefore, his reliance on the VE's testimony is supported by substantial evidence.

Furthermore, the ALJ properly considered the hypothetical questions posed to the VE and the VE's conclusions were relevant and helpful. In order to assist the ALJ in determining whether there is relevant work available, the VE must base their assessment "upon a consideration of all other evidence in the record," and their testimony must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50-52 (4th Cir. 1989) (citing Chester v. Mathews, 403 F. Supp. 110 (D. Md. 1975)). VE Paula Day testified that she reviewed the vocational evidence, and responded competently to the ALJ's questions concerning the Plaintiff's past relevant work. R. 39-41. Additionally, the hypothetical posed by the ALJ took into consideration all of the pertinent evidence from the record, discounting the opinion of Dr. Griffin as to Plaintiff's limitations for the reasons set forth above.

> Q. Consider the following hypothetical, assume that I would find that Ms. Deem or a hypothetical individual would possess a residual functional

capacity allowing for sedentary work as defined in the regulations. the full range being diminished by the following: this individual can lift and carry ten pounds occasionally; can sit for eight hours in an eight-hour work day; walk or stand two hours in an eight-hour day; but should be allowed an alternating sit/stand option; no climbing; only occasional bending or stooping; and no crawling; and no work at unprotected heights or around dangerous machinery. Considering Ms. Deem's age, education, and work experience, are there jobs she can perform, and the first question would be whether she could return to any past jobs?

A. Your Honor, those limitations would allow this individual to return to medical receptionist work . . . .

Plaintiff argues that when asked to take into account additional limitations, the VE testified that there were no jobs that the Plaintiff could perform. Plaintiff argues that she is able to only sit, stand, and walk for a maximum of an hour per day, and there are no jobs which would support those criteria. Pl.'s Mem. at 15-16; R. 41-42. The severe limitations posed to the VE by Plaintiff's attorney are those which are advocated only by Dr. Griffin. As discussed, supra, Dr. Griffin's findings are not supported by the record and other medical evidence, therefore, these limitations need not be present in the hypothetical question in order for the VE's testimony to be relevant and helpful to the ALJ's determination. The ALJ's finding that Plaintiff is able to return to her past relevant work as a medical receptionist is supported by substantial evidence.

## V. RECOMMENDATION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be AFFIRMED. It is further recommended that Plaintiff's Motion for Summary Judgment (ECF No. 8) should be DENIED, and Defendant's Motion for Summary Judgment (ECF No. 11) be GRANTED. Because this Court finds no error with the ALJ's decision, the Court recommends DENYING Plaintiff's Motion to Remand (ECF No. 9).

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984), <u>cert. denied</u>, 474 U.S. 1019 (1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208 (1984).

                                                                     _____/s/_____
                                                                                    Tommy E. Miller
                                                                    UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
May 13, 2011

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Joel C. Cunningham, Jr., Esq.
120 Edmunds Blvd.
P.O. Box 459
Halifax, Virginia 24558

Susan Lynn Watt, Esq.
Office of the United States Attorney
101 West Main Street
Suite 8000
Norfolk, Virginia 23510

Fernando Galindo, Clerk

By _L. Howard_

Deputy Clerk

May 13, 2011