IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



**KIMBERLIN MARIE DEEM,**

PLAINTIFF,

v.                                                   CIVIL CASE NO. 2:10CV394

**MICHAEL J. ASTRUE,**
Commissioner of the Social Security Administration,

DEFENDANT.

## ORDER

This matter comes before the Court on Plaintiff Kimberlin Marie Deem's ("Plaintiff" or "Deem") Objections to the Report and Recommendation of the Magistrate Judge. Doc. 14. For the reasons explained below, the Court **OVERRULES** Deem's objections and **ADOPTS** the Magistrate Judge's Report & Recommendation ("R&R"). Doc. 13.

### I. BACKGROUND[1]

*A. Procedural History*

Deem filed an application for disability insurance benefits on February 1, 2008. R&R at 2. The Commissioner of the Social Security Administration ("Defendant" or "Commissioner") denied Deem's application initially and on reconsideration. Id. Deem requested and received an administrative hearing on September 15, 2009 before an ALJ. Id. The ALJ issued a decision denying Deem's claim on September 28, 2009. On June 10, 2010, the Appeals Council denied

---

[1] This background does not reflect the complete procedural and factual history as to Deem, but only those proceedings and facts relevant to the present objections. The Court accepts as fact the procedural history and factual background set forth by the Magistrate Judge in the R&R, insofar as they are not objected to by Deem.

1

Deem's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. Id.

Deem timely filed the instant action for judicial review on August 10, 2010. Doc. 1. On October 7, 2010, the instant action was designated to a Magistrate Judge for report and recommendation. Doc. 6. In accordance with a court order issued by the Magistrate Judge on October 8, 2010, Deem filed a motion for summary judgment on October 29, 2010, doc. 8, and the Commissioner filed a cross-motion for summary judgment on December 8, 2010, doc. 11. Deem also filed a motion to remand. Doc. 9. On May 13, 2011, the Magistrate Judge issued the R&R, recommending that the Court affirm the final decision of the Commissioner, deny Deem's motion for summary judgment, deny Deem's motion to remand, and grant the Commissioner's cross-motion for summary judgment. R&R at 17. On May 26, 2011, Deem timely filed her objections to the R&R, doc. 14, and on June 6, 2011, the Commissioner timely filed his reply, doc. 15.

*B. Factual Background*

Deem does not object to the recitation of the procedural and factual background of this case contained in the R&R, which sets forth, inter alia, the following facts.[2] Deem filed an application for disability insurance benefits with the Social Security Administration ("SSA") on February 1, 2008. R&R at 2. The application alleged that Deem suffered from a disability since April 30, 2007, due to congestive heart failure, cardiac arrhythmia, palpitations, sleep apnea, lymphedema, and depression. Id. Before the onset, Deem graduated high school and attended Key Business College where she obtained a certificate to become a medical office employee, and Deem's past relevant work experience includes positions as a meat counter clerk, a grocery

---

[2] To the extent the Court cites a fact from the administrative record, the Court will cite as follows: "R. at __."

cashier, and a medical receptionist. Id. Deem has acquired sufficient quarters of coverage to remain insured through December 31, 2012. Id.

*1. Medical Records*

Deem alleges suffering increasing chest congestion and pain leading to a disability onset of April 30, 2007. Id. Prior to Deem's onset date, she saw her treating physician, Dr. Alesia Griffin ("Dr. Griffin"), on April 7, 2006, complaining of lower back pain and urinary incontinence, for which she was prescribed Flexeril and Motrin. Plaintiff returned to Dr. Griffin on June 1, 2006, complaining of leg swelling and was found to have 2+ pedal edema. Id. at 3. She also underwent a lower extremity venous duplex scan on May 18, 2006, which revealed good arterial flow and no deep vein thrombosis. Id.

In May of 2007, Deem was hospitalized for two nights after a gradual worsening of chest congestion, and chest pressure that caused Deem to feel "that she was drowning." Id. The records indicate that she was morbidly obese with a history of lymphedema, and took Lasix daily for lower extremity edema. Id. Deem submitted to a number of tests, including a CT scan of her chest that indicated possible pulmonary hypertension but no evidence of an embolism. Id. Other exams indicated normal operation of her heart and her lymphatic system. Id. During the hospital stay, Deem was anticoagulated and rate controlled. Id. The resulting diagnosis from this hospitalization was "new-onset" atrial fibrillation and congestive heart failure. Id. Deem was told to follow-up with her primary care physician and to eat a prescribed diet, and was prescribed Coumadin and Lovenox. Id. Attempted electrical cardioversion failed. Id.

At a June 5, 2007 follow-up appointment with Dr. Griffin, Deem showed no apparent distress, and her heart had a regular rate and rhythm. Id. Deem was placed on Toprol, a beta blocker, and referred to cardiac rehabilitation to improve her endurance, after complaining of

3

fatigue. Id. At a July 5, 2007 follow-up appointment, Deem complained of an irregular heartbeat, and a physical exam confirmed that her rhythm was "irregularly irregular."[3] R. at 254. Deem, however, was not suffering any chest pain, palpitations, tachycardia, orthopnea, or edema. Id.

On August 6-8, 2007, Deem was hospitalized after being referred by Dr. Griffin. R&R at 3. After a routine follow-up with Dr. Griffin, Deem had become short of breath, and had the same feeling of drowning. Deem reported feeling chest pain and pressure, and presented with atrial fibrillation and edema. Id. Deem's heart rate was controlled with medications and was given Lasix. Id. at 4. At her discharge, Deem was diagnosed with CHF complicated by chronic obstructive pulmonary disease. Id. Deem was discharged with stable vital signs, improvement in her shortness of breath, and a significant decrease in the amount of edema. Id.

On August 16, 2007, Deem met with Dr. Griffin for a follow-up appointment. At that appointment, Deem denied having chest pains, palpitations, tachycardia, or edema. Id. She did complain of shortness of breath and frequent wheezing. All aspects of her cardiovascular exam were unremarkable. Id. Dr. Griffin refilled Deem's Lasix, for atrial fibrillation, and Wellburtin, for depression related to chronic illness. Id. Deem saw Dr. Griffin again on August 23, 2007, and again her exam was unremarkable. Id. Deem was told to return in two months. Id.

Deem returned to Dr. Griffin a few weeks later on September 6, 2007. Her exam was unremarkable and she denied chest pain, palpitations, tachycardia, edema, and shortness of breath. Dr. Griffin refilled her Prilosec. Id. Under status, Dr. Griffin noted that Deem was

---

[3] As discussed infra, this was the only exam that revealed an irregular heart rate. R. at 18.

currently unable to work due to shortness of breath and chest pressure. She noted this may improve with cardiac rehabilitation.[4] Id.

On September 13, 2007, and October 16, 2007, Deem returned to Dr. Griffin for follow-up appointments. Similar to the September 6, 2007 appointment, Deem reported no change in condition, or chest pains, palpitations, tachycardia, edema, or shortness of breath. Id. On September 13, 2007, Dr. Griffin switched Deem from Wellbutrin to Celexa for her illness-related depression. She again noted that Deem was currently unable to work, but that her condition may improve with cardiac rehabilitation. Id.

On November 1, 2007, Deem saw Dr. Joseph T. Adinaro ("Dr. Adinaro"), a cardiovascular disease specialist, for a follow-up. Id. at 5. Deem improved on an increase in Lopressor, and reported no chest pain or discomfort, and no palpitations, or dyspnea. Id. Deem requested a decrease in diuretics and Dr. Adinaro stopped the spironolactone and cut her Lasix. Id. Dr. Adinaro also increased Toprol for ease of dosing. Id. Deem's exam overall was unremarkable. Id.

Deem returned to Dr. Griffin on November 5, 2007, where she denied chest pain, palpitations, tachycardia, edema and shortness of breath. Id. Her exam was unremarkable and Deem received an influenza immunization. Id. On November 13, 2007, Deem called into Dr. Adinaro's clinic to report that the November 1, 2007 change in her medication was causing palpitations. Id. On November 19, 2007, Deem called the clinic to report that the change in her metaprol was working. Id.

Deem visited Dr. Griffin on December 7, 2007 for a follow-up visit. Deem noted she had experienced shortness of breath, edema, and fatigue, but was following her medication regimen.

---

[4] The administrative record does not contain records related to cardiac rehabilitation and it is unclear if Deem ever participated in rehabilitation.

5

Id. She was in no apparent distress at the visit and her physical exam was similar to the other recent follow-ups with Dr. Griffin. Id.

Deem followed up with Dr. Adinaro on January 3, 2008. Deem complained that her edema returned and she had some palpitations between doses of her medication. Id. Dr. Adinaro noted that Dr. Griffin had restarted Deem on spironolactone. Id. Deem's physical exam was unremarkable, and Dr. Adinaro noted an improvement in heart rate overall, some weight loss, and a decrease in smoking. Id.

In February 2008, Deem completed a <u>Function Report</u> questionnaire. Id. Deem reported that she performed light housework, prepared meals, attended to pets, and drove family members to and from work. Id. at 6. She reported that she used to be able to climb in and out of the bath tub, walk long distances, sit for long periods, and lift at least 50-70 pounds, but can no longer do so now because of her illness. Id. Deem also reported that she frequently drifts off to sleep without realizing it. Id. She stated that she prepares meals every other day, and can complete house cleaning, ironing, yard raking, and planting with breaks and help from family members. Id. Additionally, Deem reported that she goes outside "a lot," drives, and can shop for food, clothing, gifts, and personal items as often as necessary. Id. Deem reported no problems concentrating, and stated that she could still complete tasks and hobbies. Id. Deem stated that the time to complete tasks took longer, and her social activity has decreased because of her illness. She reported using no aids to get around. Id.

Deem visited Dr. Griffin on February 4, 2008 for a follow-up exam, and reported no chest pain, palpitations, or edema and the remainder of her exam was unremarkable. Id. Deem did not return to Dr. Griffin until June 11, 2008. The results of her exam were the same as her prior follow-up on February 4, 2008. Id.

Deem's treatment was evaluated by Dr. R. Castle ("Dr. Castle"), a consultant for the state agency, and Dr. Castle submitted a <u>Physical Residual Functional Capacity Assessment</u>. Id. Dr. Castle concluded that while Deem did suffer from congestive heart failure and atrial fibrillation, the limiting effects claimed by Deem were not entirely credible. Id. at 6-7. Dr. Castle also concluded that Deem's allegations of lymphedema and sleep apnea are not supported by the record, and her daytime fatigue is related to obesity. Id. at 7. Dr. Castle noted that Deem's conditions were "extremely compliant with medications," and her exams demonstrate that she is experiencing no shortness of breath. Id. Finally, Dr. Castle mentioned that Deem's self-report demonstrates that she is active on a daily basis. Id.

On September 3, 2009, Dr. Griffin prepared a letter in support of Deem's application for disability benefits. Id. Dr. Griffin also submitted a <u>Multiple Impairment Questionnaire</u>. Dr. Griffin supported Deem's application due to her medication regimen, which requires Deem to take frequent breaks and causes drowsiness. Id. Dr. Griffin also noted that Deem was deconditioned with no reasonable means of improving her endurance with her co-morbid health problems. Id. Dr. Griffin stated that Deem had many limitations which would prevent her from performing competitively in a full-time job. Id. Dr. Griffin also stated that Deem could perform low-stress work and had no limitations in her fine motor skills, but she would need frequent breaks every hour and would be absent from work at least three days per month due to her illness. Id.

*2. September 15, 2009 Hearing Testimony*

On September 15, 2009, Deem testified at an administrative hearing in Norfolk. Deem stated that her daily routine includes vacuuming, dusting, cooking, and laundry which take her most of the day to complete. Id. Deem also stated that she needs assistance carrying anything

7

over ten pounds, and must rest periodically while completing her tasks. Additionally, she testified that her conditions and medication cause exhaustion and she sleeps about 16 hours a day. Id. at 7-8. In contrast to the records provided, Deem testified that she has not driven in two years and does not have a valid license. Id. at 8. Deem stated that she tries to get out of the house as much as possible, and testified that she walks around her block, visits with friends, and visits her family. Id. Deem testified that her medication does not help the swelling in her legs, which occurs at least three days a week. Id. According to Deem, Celexa, prescribed for illness-related depression, did not help and she has some days where she feels like she cannot get out of bed. Finally, Deem stated that she has difficulty remembering faces, dates, appointments and meetings. Id.

Impartial Vocational Expert Paula Day (the "VE") testified at the hearing after reviewing the vocational evidence in the record. After the Commissioner's representative posited a hypothetical scenario, the VE testified that an individual of Deem's age, education, and work experience could perform medical receptionist work. Id. Specifically, the VE testified that the hypothetical individual could perform sedentary work that involved lifting and carrying ten pounds occasionally, sit for eight hours and walk or stand for two hours in an eight-hour day, could not climb or crawl, could occasionally bend or stoop, and could not work around unprotected heights or machinery. Id. The VE testified that the individual could work as a medical receptionist and could also perform other work in the semi-skilled sedentary job category, which exist in significant numbers in the national economy. Id. According to the VE, these jobs would also allow the person to alternate sitting and standing. Id. Upon further questioning by Deem's representative, the VE testified that if the individual could walk, sit or stand for a maximum of three hours total, this would preclude competitive employment. Id. The

8

VE also noted that should the individual be unable to interact appropriately with the general public, then that would preclude all jobs previously listed. Id. at 8-9.

*3. ALJ's September 28, 2009 Decision*

In evaluating whether Deem is entitled to disability benefits, the ALJ followed the five-step sequential evaluation of disability set forth in the Social Security regulations, which involve determining whether Deem:

> (1) is engaged in a substantial gainful activity; (2) has a severe impairment, (3) has an impairment that equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment that prevents past relevant work based on her residual functional capacity, and (5) has an impairment that prevents him from any substantial gainful employment.

R. at 13-14; see 20 C.F.R. § 416.920. The ALJ first found that Deem had not engaged in substantial gainful activity since her alleged disability onset date and, therefore, that Deem met step one of the sequential evaluation process. R&R at 9. At steps two and three, the ALJ found that Deem had congestive heart failure and obesity which were severe impairments, but that those impairments did not meet or equal in severity any of the Listings of Impairments in 20 C.F.R. pt. 404, Subpt. p. Id. The ALJ also found under steps two and three that Deem's depression was non-severe and did not cause more than minimal limitation. Id.

At step four, the ALJ considered the entire record, including Dr. Griffin's opinion, along with other opinion evidence, and, in congruence with the requirements of 20 C.F.R. § 404.1527 and Social Security Rulings, found that Deem had the residual functional capacity to perform sedentary work. Id. The ALJ modified the work by finding that Deem: can lift or carry ten pounds occasionally, can sit for eight hours and walk or stand for two hours in an eight-hour work day as long as she periodically alternates between sitting and standing, can occasionally bend or stoop, and cannot perform work that involves climbing, crawling, or exposure to heights

9

and dangerous machinery. Id. Accordingly, the ALJ concluded that Deem could perform her past work as a medical receptionist and, therefore, was not disabled as defined by the Social Security act through the date of the decision. Id. at 10.

## II. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court reviews de novo any part of a Magistrate Judge's recommendation to which a party has properly objected. FED. R. CIV. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

In exercising de novo review, the Court analyzes the Commissioner's final decision using the same standard as that used by the Magistrate Judge. Specifically, the Court's review of the Commissioner's decision is limited to determining whether that decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal quotation mark omitted). Courts have further explained that substantial evidence is less than a preponderance of evidence, but more than a mere scintilla of evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Importantly, in reviewing the ALJ's decision the Court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Id. (quoting Craig, 76 F.3d at 589) (internal quotation mark omitted) (final alteration in original). Thus, if the Court finds that there was substantial evidence to support the ALJ's factual findings, even if there was also evidence to support contrary findings, the ALJ's factual findings must be upheld.

## III. ANALYSIS

Deem disagrees with the ALJ's conclusion under step four that Deem has the residual functional capacity to perform sedentary work, including her past work as a medical receptionist, with sitting and standing modifications. In her brief in support of summary judgment to the Magistrate Judge, Deem argued that the ALJ erred by: failing to follow the treating physician rule; failing to properly evaluate Deem's credibility; and finding that Deem could perform her past work as a medical receptionist. R&R at 12. The Magistrate Judge, in the R&R, rejected Deem's arguments and recommended that the decision of the ALJ be affirmed because the ALJ's finding is supported by substantial evidence on the record, and the ALJ afforded the proper weight to the evidence. R&R at 13, 17.

In her objections to the R&R, Deem requests that the R&R not be adopted, and that the Commissioner's denial be reversed or remanded for the following reasons: (1) the ALJ failed to follow the treating physician rule by affording the opinion of Deem's treating physician, Dr. Griffin, minimal weight; and (2) the ALJ failed to properly evaluate Deem's credibility. Doc. 14.

*A. The ALJ Afforded Dr. Griffin's Medical Opinion Proper Weight*

The ALJ must give a treating physician's opinion controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); see also Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). "Circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" Craig, 76 F.3d at 590 (quoting Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded

significantly less weight." Id. Also, the regulations do not require that the ALJ accept opinions from a treating when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner). 20 C.F.R. § 404.1527(e)(1).

If the ALJ finds that a treating physician's opinion is not entitled to controlling weight, the regulations require the ALJ to take into consideration the following factors when weighing contradicting medical opinions: examining relationship; length of the treatment relationship and the frequency of examination; nature and extent of treatment relationship; supportability; consistency; specialization; and other relevant factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(d).

In this case, the ALJ afforded Dr. Griffin's medical opinion minimal weight after determining that Dr. Griffin's findings—that Deem could not perform sedentary work with sitting and standing modifications—were inconsistent with the evidence on the record. R. at 18. The ALJ afforded the state agency consultant's, Dr. Castle's, medical opinion significant weight because the ALJ concluded that Dr. Castle's findings—that Deem could lift or carry no more than ten pounds, could sit for six hours in an eight hour work day, and could stand or walk for two hours in an eight hour work day—are consistent with Deem's medical records and her activities of daily living. Id.

Deem disagrees with the ALJ, contending that the ALJ should have afforded Dr. Griffin's medical opinion controlling weight because Dr. Griffins findings are consistent with evidence "throughout the record," and the ALJ failed to rely on any other contrary substantial evidence. Doc. 14 at 2. Deem also contends that even if Dr. Griffin's medical opinion is not controlling, the ALJ should have afforded more weight to Dr. Griffin's medical opinion than Dr. Castle's based on the factors listed in 20 C.F.R § 404.1527(d).

As discussed in Section II, supra, in evaluating Deem's argument, this Court must determine whether the ALJ applied the proper legal standards and whether the ALJ's decision is supported by substantial evidence on the record. 42 U.S.C. § 405(g); Johnson, 434 F.3d at 653. After reviewing the entire record, the Court **FINDS** that the ALJ applied the proper legal standards and that the ALJ's decision to afford Dr. Griffin's medical opinion minimal weight is supported by substantial evidence on the record.

Pursuant to 20 C.F.R. § 404.1527, the ALJ declined to afford Dr. Griffin's medical opinion controlling weight after concluding that Dr. Griffin's findings were inconsistent with the evidence in the case. R. at 18. Dr. Griffin's physical exams of Deem were mostly unremarkable, with the exception of the July 5, 2007 exam that revealed an irregular heart rhythm. Id. at 254. At the July 5, 2007 exam, however, Deem was not experiencing any chest pain, palpitation, tachycardia, orthopnea, or edema. Id. Deem did visit the emergency room twice, but was monitored and released with medication. Each occurrence was followed by a visit to Dr. Griffin who noted an unremarkable physical exam. Later exams revealed unremarkable results, see id. at 230-53, and, at later follow-up appointments, it was reported that Deem's heart rate and health improved, id. at 221-22, 225. Deem also reported that she is able to complete household chores and activities, that she goes outside "a lot," that she is able to visit friends and family outside of her home, that she is able to handle money, and that she can pay attention "all day." See id. at 145-52. Therefore, the ALJ's conclusion regarding Dr. Griffin's findings is supported by substantial evidence on the record.

The ALJ also properly weighed the medical opinions in this case after declining to afford Dr. Griffin's medical opinion controlling weight. The ALJ took into account the factors listed in 20 C.F.R. § 404.1527(d) when deciding how to weigh Dr. Castle's and Dr. Griffin's medical

13

opinions. Two of these factors are supportability and consistency. In this case, the ALJ concluded that Dr. Castle's opinion was entitled to significant weight because Dr. Castle's opinion is supported by the record and Dr. Castle's findings are consistent with the evidence in this case. R. at 18. As discussed in the previous paragraph, there is substantial support in the record for the ALJ's conclusions.

Accordingly, the ALJ applied the proper legal standards and the ALJ's decision to afford Dr. Griffin's medical opinion minimal weight is supported by substantial evidence on the record.

*B. The ALJ Properly Determined Deem's Credibility*

Before deciding whether a claimant can perform past relevant work, the ALJ must determine the claimant's residual functional capacity. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The residual functional capacity must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig, 76 F.3d at 594; see also 20 C.F.R. §§ 404.1529(a), 416.929(a). The first step is to determine whether, based on all the medical evidence in the record, there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Craig, 76 F.3d at 594. Deem does not challenge the first step because the ALJ found that Deem's medically determinable impairments could reasonably be expected to cause the alleged symptoms. R. at 17.

The second step of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the

14

available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96.

In this case, the ALJ found that Deem has the residual functional capacity to perform sedentary work, except that she can lift or carry ten pounds occasionally, sit for eight hours in an eight hour work day, and walk or stand for two hours in an eight hour work day. R. at 16. The ALJ then found that Deem's statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment. Id. at 17. The ALJ reasoned that Deem's allegations regarding the intensity, persistence, and limiting effects of her symptoms are inconsistent with her activities of daily living, the conservative level of treatment she received, and the treatment notes, which indicated that Deem was doing better on her medications and her condition was generally stable. Id. at 17-18.

Deem disagrees with the ALJ's finding. Deem asserts that the ability to engage in some daily activities is not inconsistent with Deem's allegations of disability. Doc. 14 at 3. She argues that "[t]here is absolutely no evidence that [she] engaged in activities that were inconsistent with her allegations" and that the "ALJ failed to cite any credible evidence" to contradict her testimony that she was limited and could not perform sedentary work. Id. at 4.

In assessing Deem's argument, although this Court cannot make credibility determinations, the Court "is empowered to review the ALJ's decisions for substantial evidence." Johnson v. Barnhart, 434 F.3d 540, 658-59 (4th Cir. 2005) (citing Craig, 76 F.3d at 589). As noted by the Magistrate Judge in the R&R, the ALJ's assessment of a claimant's

15

credibility is entitled to great weight if it is supported by the record. Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984); see also R&R at 15.

In this case, the Court **FINDS** that the ALJ's determination—that Deem's statements regarding the intensity, persistence, and limiting effects of her symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment—is supported by substantial evidence on the record. Deem reported that she is able to complete household chores and activities, that she goes outside "a lot," that she is able to visit friends and family outside of her home, and that she is able to handle money. See R. at 145-49. Deem also reported that she can pay attention "all day," id. at 150, and that she can clean, iron, cook, rake, and plant flowers in a day with assistance from others and as long as she rests in between activities, id. at 147. The ALJ did not rely solely on evidence regarding Deem's daily activities in making a determination. Deem's symptoms seem to be controlled by medication as most of her exams are unremarkable and only one exam revealed an irregular heart rhythm, id. at 220-64, 267-70, and Deem's medical records indicate that Deem's heart rate and health are improving, id. at 221-22, 225. Additionally, the residual functional capacity is consistent with Deem's limitations and need to rest. Id. at 16. Therefore, there is substantial support in the record for the ALJ's assessment of Deem's credibility.

## IV. CONCLUSION

For the reasons discussed above, after considering the entire record in this case, the Court **FINDS** that the ALJ applied the proper legal standards and that the ALJ's findings are supported by substantial evidence on the record. The Court **OVERRULES** Deem's objections, doc. 14, and **ADOPTS**, in its entirety, the Magistrate Judge's R&R, doc. 13. The Court **AFFIRMS** the recommendations of the Magistrate Judge and **GRANTS** summary judgment to the

Commissioner, doc. 11. The Court **DENIES** Deem's motion for summary judgment, doc. 8, and **DENIES** Deem's motion to remand, doc. 9.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

*HENRY COKE MORGAN, JR.*
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
Date: July 8, 2011

/s/
**Henry Coke Morgan, Jr.**
**Senior United States District Judge**